**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FLOYD M. MINKS,**

           **Plaintiff,**

**-vs-**                                                         **Case No. 6:05-cv-1894-Orl-31KRS**

**POLARIS INDUSTRIES, INC.,**

           **Defendant.**

_____

# ORDER

This matter comes before the Court on Defendant Polaris' Motion for Summary Judgment (Doc. 52) and the response (Doc. 69) filed by the Plaintiff, Floyd M. Minks ("Minks").

**I.   Background**

For many years, Minks performed outside engineering and design services for Polaris, which sells, among other things, all-terrain vehicles ("ATVs"). On May 12, 1987, Minks received U.S. Patent No. 4,664,080 (the "'080 Patent") for a "Selective Speed Limiting Apparatus for Internal Combustion Engine." (Doc. 1 at 5). The invention at issue is a governor, designed to limit the speed of motorized vehicles, such as the ATVs sold by Polaris, when they are operated in reverse. (Doc. 1 at 5). For some time Polaris bought speed-limiting products from Minks' company, but eventually switched to a competitor's version. (Doc. 52 at 5). Some time thereafter, Minks became convinced that the governor used by Polaris infringed the '080 Patent. (Doc. 52 at 5).

On December 22, 2005, Minks sued Polaris for infringement of the '080 Patent. (Doc. 1). In the instant suit, Minks has only alleged infringement of claim 2. (Doc. 67 at 5). The Court has entered its order (Doc. 93) on the parties' competing *Markman* motions for construction of claim 2, and familiarity with that order is assumed.

## II.     Standards

### A.     Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Summary judgment is as appropriate in a patent case as in any other. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831 (Fed. Cir. 1984).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements

or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B. Patent Infringement

Analysis of patent infringement involves two steps: (1) claim construction to determine what the claims cover, followed by (2) determination of whether the properly construed claims encompass the accused structure. *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 528 (Fed. Cir. 1996). To establish infringement, the plaintiff must establish that the accused device includes every limitation of the claim or an equivalent of each limitation. *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

Literal infringement requires that each and every limitation set forth in a claim appear in an accused product. *Frank's Casing Crew & Rental Tool, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the limitation." *Id*. Although the issue of whether an accused device includes a structural equivalent under § 112, ¶ 6 is a question of fact, a court may find the absence of an equivalent where no reasonable jury could have found that the accused device has an equivalent to the disclosed structure. *Id.*

Because structural equivalents under § 112, ¶ 6 are included within literal infringements of means-plus-function claims, the court must compare the accused structure with the disclosed structure, and must find equivalent structure as well as identity of claimed function for the structure. *Id.* This inquiry for equivalent structure examines whether the assertedly equivalent structure performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification. *Id.*

### III. Analysis

Polaris raises three issues in its motion, but only one merits extended discussion. Polaris' claim that the doctrine of laches bars this suit is dependent upon at least one disputed issue of material fact – the date that Minks knew or should have known of Polaris' alleged infringement. Summary judgment is therefore precluded. And Polaris' contention that Minks is limited to damages from January 5, 2005 forward because he did not provide notice of infringement before that date is also dependent upon a disputed issue of material fact, and is thus inappropriate for resolution via summary judgment.

The remaining issue is whether Polaris' accused devices infringe claim 2 of the '080 Patent literally or under the doctrine of equivalents. In essence, this issue boils down to an assessment of whether the accused Polaris devices possess a structure that (1) performs the identical function recited in the limitations of claim 2 of the '080 Patent and (2) is either identical to or equivalent to the corresponding structure in the specification of that patent. *See Frank's Casing Crew*, 389 F.3d at 1370.

For ease of reference, claim 2 of the '080 Patent reads as follows:

>> A system for selectively inhibiting ignition above a preselected engine speed for an internal combustion engine, said system comprising:
> (a) means for providing an electrical input which varies in a predetermined manner with engine speed;
> (b) control means adapted to control the ignition of said engine, said control means including means for inhibiting ignition responsive to a control signal; and
> (c) means for providing said control signal responsive to a direct current voltage input to thereby selectively inhibit ignition responsive to the speed of said engine.

As more fully described in this Court's *Markman* order, the structure corresponding to the "means for providing said control signal" described in paragraph (c) is, among other things, a voltage-sensitive circuit. (Doc. 93 at 8-9). Polaris argues that Minks cannot prevail because its accused devices utilize a circuit that is sensitive to alternator frequency, not alternator voltage. (Doc. 52 at 21). In support of this point, Polaris presents deposition testimony from one Brad Teubner ("Teubner") (Doc. 52-6) that addresses various "units" – presumably, Polaris ATVs – that "would have the Minks box on them" (Doc. 52-6 at 4). But Teubner's testimony is too cryptic to establish, as a matter of law, that these devices lack voltage-sensitive speed-limiting circuits, much less that these are the accused devices. The testimony of Polaris engineer Russell Olson (Doc. 52-7 at 4-5), which Polaris also offers on this issue, is similarly insufficient to clear either of these hurdles, even when combined with the testimony of Teubner.

Polaris also argues that Minks himself has admitted that speed limiter circuits sensitive to alternator frequency are not equivalent to speed limiter circuits sensitive to alternator voltage. (Doc. 52 at 21). However, the evidence on this point is much less decisive than Polaris would have it. Minks simply testified that, for purposes of construing paragraph 2(a) of claim 2, voltage and frequency of an alternator are not equivalent to one another. (Doc. 52-3 at 20). This is a far

cry from an admission that a circuit sensitive to frequency cannot *ever* be the equivalent of a circuit sensitive to voltage.

So, too, for Minks' statement in a subsequent patent that the frequency-sensitive speed limiter circuit employed in that patent achieved "appreciably better accuracy" and was able to "almost completely remove[]" alternator tolerances as compared to a circuit operating on alternator voltage. (Doc. 52 at 21-22). An admission that one sort of frequency-sensitive circuit achieved significantly better results than a voltage-sensitive circuit is not an admission that every type of frequency-sensitive circuit will always do so.

Polaris also contends that Minks obtained issuance of claim 2 from the Patent Office only by relinquishing any claim to a circuit arrangement other than the one disclosed in Figure 2 of the '080 Patent. (Doc. 52 at 23-24). Specifically, after an initial rejection, Minks overcame two prior art references in part by asserting to the examiner that "[m]ost importantly, neither of the [prior art] references discloses the specific circuit arrangement recited in" what became claim 2 of the issued patent. (Doc. 52 at 24).

Prosecution history estoppel acts as one check on application of the doctrine of equivalents by precluding a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application of the patent. *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1577-78 (Fed. Cir. 1997). Whether estoppel applies is a question of law. *Id.* Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel. *Id.*

However, while it is true that Minks pointed out that neither of the prior art references he had to overcome disclosed the particular circuit arrangement in Figure 2, this is not the same thing as him *surrendering* every other potential circuit arrangement.  The Court finds that prosecution history estoppel does not apply in this case.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant Polaris' Motion for Summary Judgment (Doc. 52) is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 13, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party