**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FLOYD M. MINKS,**

                 **Plaintiff,**

**-vs-**                                          **Case No. 6:05-cv-1894-Orl-31KRS**

**POLARIS INDUSTRIES, INC.,**

                 **Defendant.**

## ORDER

This matter comes before the Court on the Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Doc. 170), filed by the Defendant, Polaris Industries, Inc. ("Polaris"), and the response (Doc. 173) filed by the Plaintiff, Floyd M. Minks ("Minks").

**I.    Background**

On May 12, 1987, Minks received U.S. Patent No. 4,664,080 (the "'080 Patent") for a "Selective Speed Limiting Apparatus for Internal Combustion Engine." (Doc. 1 at 5). The invention is a governor, designed to limit the speed of motorized vehicles when they are operated in reverse. (Doc. 1 at 5). For some time Polaris bought speed-limiting products from Minks' company, but eventually switched to a competitor's version. (Doc. 52 at 5). Some time thereafter, Minks became convinced that the governor used by Polaris infringed the '080 Patent. (Doc. 52 at 5).

On December 22, 2005, Minks sued Polaris, alleging infringement of claim 2 of the '080 Patent. (Doc. 67 at 5). On December 13, 2006, the Court entered its order (Doc. 93) on the

parties' competing *Markman* motions for construction of claim 2. After a four-day trial, a jury rejected Polaris' affirmative defenses, found that Polaris had willfully infringed claim 2 of the '080 Patent, and awarded Minks $1,294,620.91 in damages. Polaris now seeks to have the entry of judgement in its favor or, at the least, a new trial.

## II.     Legal Standards

### A.     Motion for Judgment as a Matter of Law

A motion for judgment as a matter of law may be made any time before the case is submitted to the jury. Fed.R.Civ.P. 50(a)(2). Rule 50 provides that, if a party has been fully heard on an issue and the court finds that a reasonable jury would not have a sufficient evidentiary basis to find for the party on that issue, the court may resolve that issue against the party and grant a motion for judgment on any claim or defense that can be maintained or defeated with a favorable finding on that issue. Fed.R.Civ.P. 50(a)(1). If such a motion is not granted initially, the Court is considered to have submitted the action to the jury subject to the Court's later resolution of the legal questions raised in it. Fed.R.Civ.P. 50(b). The movant may renew its request for judgment no later than 10 days after the entry of judgment or, if the motion addresses an issue not decided by the verdict, no later than 10 days after the discharge of the jury. *Id.*

In considering a defendant's renewed motion for judgment as a matter of law, the court should review all of the evidence in the record in a light most favorable to the non-mover, must draw reasonable inferences favorable to the non-mover, must not determine credibility of witnesses, and must not substitute its choice for that of the jury. *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1269 (Fed. Cir. 1999). If, after this analysis, substantial evidence exists to support the jury's verdict, the motion for judgment as a matter of law must be

denied. *Id.* Substantial evidence is more than merely colorable evidence, or a mere scintilla of evidence. Rather, it such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

### B. Motion for a New Trial

A renewed motion for judgment as a matter of law may be joined, in the alternative, with a motion for a new trial under Rule 59. Fed.R.Civ.P. 50(b). These motions "have wholly distinct functions and entirely different standards govern their allowance." 9A Wright & Miller, *Federal Practice and Procedure* § 2531.

> If a motion for new trial is granted, the case is tried again. If the motion for judgment as a matter of law is granted, the case is at an end. Because of the finality that the latter motion has, it is natural that it should be measured by a far more rigorous standard. On a motion for a new trial, the court has a wide discretion to order a new trial whenever prejudicial error has occurred. On a motion for judgment as a matter of law, it has no discretion whatsoever and considers only the question of whether there is sufficient evidence to raise a jury issue.

*Id.* The decision as to whether to grant a new trial is committed to the discretion of the trial judge. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

Rule 59(a)(1), Fed.R.Civ.P., provides that after a jury trial a new trial may be granted to all or any of the parties on all or part of the issues "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Any such motion must be filed no later than 10 days after entry of the judgment. Fed.R.Civ.P. 59(b). In addition, the court may order a new trial on its own initiative, so long as it does so not later than 10 days after the entry of judgment. Fed.R.Civ.P. 59(d). If a timely Rule 59 motion has been filed, the court may grant it for a reason not stated in the motion. Fed.R.Civ.P. 59(d).

The trial court may grant a motion for a new trial under Rule 59 if it believes the verdict rendered by the jury was contrary to the great – and not merely the greater – weight of the evidence. *Williams* at 973. To make this determination, the trial judge must independently weigh the evidence favoring the jury verdict against the evidence in favor of the moving party. *Id.* (citing *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)). A trial judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. *Williams v. City of Valdosta*, 689 F.2d 964, 973 n.7 (11th Cir. 1982). In cases involving simple issues, highly disputed facts, and an absence of "pernicious occurrences," the Court has less freedom to disturb a jury verdict than it does in cases involving complex issues, facts not highly disputed, and events arguably marred by error. *Id.* (citing, among others, *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362 (5th Cir. 1980)). An order granting a new trial is ordinarily not appealable, as it is not a "final decision" within the meaning of 28 U.S.C. § 1291. *Hardin v. Hayes*, 52 F.3d 934, 937 n.2 (11th Cir. 1995).

**III.   Analysis**

Polaris raises three arguments in support of its conclusion that it is entitled to judgment as a matter of law: First, that Minks failed to provide substantial evidence that the accused devices contained a "voltage-sensitive circuit" or a "switch S3," as required by this Court's *Markman* order; second, that as a matter of law Minks could not have provided the required notice of infringement to Polaris on November 23, 2004, as found by the jury; and third, that the record evidence raises a presumption that laches barred Minks' claim, which Minks failed to rebut.

### A.     The voltage-sensitive circuit and switch S3

Claim 2 of the '080 Patent reads as follows:

> A system for selectively inhibiting ignition above a preselected engine speed for an internal combustion engine, said system comprising:
> (a) means for providing an electrical input which varies in a predetermined manner with engine speed;
> (b) control means adapted to control the ignition of said engine, said control means including means for inhibiting ignition responsive to a control signal; and
> (c) means for providing said control signal responsive to a direct current voltage input to thereby selectively inhibit ignition responsive to the speed of said engine.

In its *Markman* order, the Court found that Minks drafted the elements of claim 2 in "means-plus-function" format and that element (c) of claim 2 required a "structure that contains identical or equivalent structure to the **voltage-sensitive circuit** comprised of the following components as shown in Figure 2 [of the '080 Patent] and described in the specification: (a) diode D1, connected to terminal B; (b) voltage divider R1 and R2; (c) Zener diode Z1; (d) transistor Q1; (e) resistor R3; (f) diodes D1 and D2; (f) **switch S3**, connected to terminal A; (g) resistor R6; (h) capacitor C1; (I) voltage divider R4 and R5; and (j) an electrical connection from the voltage divider R4 and R5 over which a control signal is provided." (Doc. 93 at 8-9) (emphasis added).

Polaris points out that the accused devices utilize a circuit that senses the frequency of the alternator's signal, rather than its peak voltage. (Doc. 170 at 11).  Polaris also contends that Minks himself testified that the voltage-sensitive circuit of claim 2, element (c) cannot be structurally equivalent to a frequency-sensitive circuit (such as those employed in the accused devices) because those two types of circuits "operate in substantially different ways to achieve substantially different results." (Doc. 170 at 11).

At trial, Minks produced substantial evidence that the circuit in the patent and the circuits in the accused devices are all "sensitive" to the presence of DC voltage at Terminal A, using it to detect whether the vehicle is being operated in reverse. As such, the jury had a reasonable basis for concluding that the circuits were all "voltage sensitive." In addition, Minks produced evidence that the circuits in the accused devices detect engine speed at Terminal B as a function of the frequency of the AC voltage produced by the alternator. Again, it is reasonable to conclude that such circuits are "voltage sensitive." In addition, the jury heard evidence that the amplitude and the frequency of the AC voltage both vary predictably with engine speed and that, to one skilled in the art of circuit design/electrical engineering, they are equivalent for purposes of determining speed. As such, the jury could reasonably conclude that the methods employed in the '080 Patent and in the accused devices were equivalent or interchangeable.

Finally, after reviewing those portions of Minks' testimony that purportedly establish that the voltage-sensitive circuit of claim 2, element (c) operates in a substantially different way and achieves a substantially different result that the circuits in the accused devices, the Court finds that the testimony has been misconstrued and does nothing to undercut the jury's conclusion. Minks testified that the identified circuit would require different components to make it sensitive to frequency, but he did not testify that such a frequency-sensitive circuit would operate in a substantially different way or achieve substantially different results.

As noted above, the Court construed element (2) of claim 3 as a structure that contained identical or equivalent structure to the circuit shown in Figure 2 of the '080 Patent, which contained certain specified components, including a "switch S3". (Doc. 93 at 9). Switch S3 permitted the motor vehicle's operator to select a second, higher reverse speed limit by opening a

circuit. The accused devices only had a single possible reverse speed limit, and therefore had no switch to permit selection of another one. Polaris argues that, as a result, the structure of element (2) of claim 3 is not identical or equivalent to the corresponding structure of the accused devices. (Doc. 170 at 16-18). However, as Minks testified at trial, switch S3 performed no function relating to claim 2. (Claim 5 of the '080 Patent included "means for inhibiting ignition at two or more different predetermined speeds." Claim 2 did not reference difference speeds.) Because switch S3 performed no function in claim 2, a structure without such a switch would be equivalent to one with it. It was not unreasonable for the jury to accept Minks' testimony on this point.

### C. Notice of Infringement

The jury found that Minks provided actual notice of alleged infringement sufficient to satisfy 35 U.S.C. § 287(a) as of November 23, 2004. Polaris contends that Minks Engineering, not Minks, sent a letter on that date to Polaris, and that Minks Engineering did not have the right to sue for infringement, rendering it unable to provide the statutorily required notice. (Doc. 170 at 19-21). However, the letter was actually sent by Minks, whose testimony suggested that he sent such letters in his dual capacities as an individual (and patent owner) and as president of Minks Engineering, the exclusive licensee of the '080 Patent. In addition, contrary to Polaris' interpretation of his testimony, Minks did not admit that Minks Engineering lacked the right to enforce its exclusive license. *See, e.g.*, *I.C.E. Corp. v. Armco Steel Corp.*, 201 F. Supp. 411, 412 (S.D.N.Y. 1961) (holding that exclusive licensees have sufficient interest to provide notice of infringement and citing cases).

**D.     Laches**

Finally, Polaris points to testimony from Minks that he knew or should have known as early as 1997 that Polaris was going to infringe his patent, and that he shirked his obligation to enforce his patent rights for more than seven years. (Doc. 120 at 70-73). Specifically, Polaris points to testimony from Minks that he believed in 1997 (when Polaris told him it was switching to a competitor's product) that it was impossible to design a reverse speed limiter that did not infringe his patent. However, there was evidence that Polaris deceived Minks by telling him that the new speed limiters would operate by sensing ground speed rather than engine speed. It was not unreasonable for the jury to conclude that Minks had not been put on notice regarding potential infringement by Polaris until shortly before he filed the instant suit, and that therefore he had not unreasonably delayed that filing.

**IV.    Conclusion**

The Court finds that the jury had a reasonable evidentiary basis for each of the four disputed conclusions addressed above. And Polaris has not raised any other issues that would justify its alternative request for a new trial. In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (Doc. 170) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 15, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party