**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FLOYD M. MINKS,**

      **Plaintiff,**

-vs-                 Case No.  6:05-cv-1894-Orl-31KRS

**POLARIS INDUSTRIES, INC.,**

      **Defendant.**

**HILL, RUGH, KELLER & MAIN, P.L.;**
**SCARBOROUGH, HILL & RUGH, P.L.;**
**and ALLEN, DYER, DOPPELT,**
**MILBRATH & GILCHRIST, P.A.,**

      **Petitioners,**

-vs-

**FLOYD M. MINKS,**

      **Respondent.**

## ORDER

  In the underlying case, the Plaintiff, Floyd Minks ("Minks") sued Polaris Industries, Inc. ("Polaris"), alleging patent infringement.  That matter has essentially been completed.  The case now comes before the Court on motions (Doc. 332, Doc. 334) filed by Minks' former counsel to determine and enforce a charging lien for professional services they rendered in the underlying litigation.  Minks opposes the motions.  (Doc. 338).  The Court held an evidentiary hearing on June 10, 2011 at which the parties presented testimony and introduced exhibits.  Having

considered the pleadings, evidence and argument of counsel, the Court concludes that Minks' former counsel are entitled to a charging lien for a portion of the fees and costs they seek.

## I. The Facts

Attorneys Christopher Hill ("Hill") and Herbert Allen ("Allen"), together with their respective law firms,[1] represented Minks in connection with this litigation beginning in 2005. In January 2007, a jury determined that Polaris had willfully infringed Minks' patent, returning a verdict for him and against Polaris in the amount of $1,294,620.91. (Doc. 47). The Court remitted that verdict to $27,904.80 (which the Court enhanced to $55,809.60 due to the finding of willfulness) plus pre-judgment interest. (Doc. 178). In addition, the Court awarded Minks attorneys' fees and costs in the amount of $123,876.28. (Doc. 184).[2]

An appeal followed. On February 9, 2009, the Federal Circuit affirmed on the issues of Polaris's liability and the unsustainability of the original damages award but ordered a new trial on damages. *Minks v. Polaris*, 546. F.3d 1364 (Fed. Cir. 2008). The second trial was conducted in April of 2009. At the conclusion of this trial, the jury awarded Minks $709,509.30 in damages. (Doc. 262). After the willfulness enhancement and the inclusion of costs, the verdict totaled $1,512,992.73. (Doc. 305).

---

[1] Hill, Rugh, Keller & Main, P.L and Scarborough, Hill & Rugh, P.L. for Hill; Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. for Allen. For simplicity's sake, this opinion will refer to Hill and Allen rather than their firms, which actually filed the charging liens.

[2] The Court awarded only about half the amount sought by Minks, finding that significant amounts of time had been wasted pursuing the nonsensical damages theories that had resulted in the unsustainable damages award.

Following the resolution of post-trial motions, Minks employed new counsel. Minks' new counsel filed another appeal on November 17, 2009. (Doc. 313). In December 2009, Hill and Allen filed the charging liens (Doc. 317, Doc. 318) that are the subject of this order. The issue of attorney's fees was deferred by this Court, pending the outcome of the second appeal. (Doc. 319). On December 10, 2010, in a *per curiam* opinion, the Federal Circuit affirmed the judgment below. (Doc. 323). The Federal Circuit's mandate issued on January 19, 2011.

On March 25, 2011, after six years of contentious and protracted litigation, Minks and Polaris settled the remaining issues between them. (Doc. 330). As part of that settlement, Polaris and Minks deposited $325,000 into the registry of the Court to secure the payment of any fees or costs determined by the Court to be due to Hill and Allen.

**II. The Dispute**

    **A.**    **Fees and Costs Sought**

Throughout the course of this litigation, Hill and Allen billed Minks a total of $503,590.40. Minks has paid $237,297.77. At the hearing in this matter, Hill stated that this sum should be reduced by $84.00 for reasons not pertinent to this order. This leaves an outstanding balance of $266,208.63, with $240,977.77 due to Hill and $25,398.86 due to Allen. Hill and Allen also seek pre-judgment interest on these amounts.

    **B.**    **Minks' Position**

It is undisputed that Minks employed Hill and Allen to represent him in this matter and agreed that they would be paid on a reasonable, hourly fee basis. Minks does not dispute the number of hours they have billed or contest the reasonableness of their hourly rates. Rather, he argues generally that the outstanding balance is unreasonable because "the law firms' errors at trial

contributed to the need for the two appeals and a second trial [and] adversely impacted the ultimate result obtained." (Doc. 338 at 3). Minks' new counsel also contends that Hill and Allen have failed to satisfy the requirements for imposing a charging lien and that the lien was untimely filed (Doc. 338 at 1).

**III. Discussion**

    **A.    Validity of the Charging Lien**

In *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So. 2d 1383k 1385-86 (Fla. 1983), the Florida Supreme Court set out the four elements of a charging lien in Florida: (1) an express or implied contract between the attorney and the client; (2) an understanding (express or implied) between the parties that payment is either dependent upon recovery or will come from the recovery; (3) the client has attempted to avoid payment or there is a dispute as to the amount involved; and (4) timely notice. Here, elements (1) and (3) have clearly been satisfied. The other two elements are addressed below.

        <u>Timeliness</u>. Minks argues that the liens were not timely filed because they were filed after entry of a final judgment. It is true, in general terms, that a charging lien should be filed before the lawsuit has been reduced to judgment. *See*, *e.g.*, *Heller v. Held*, 817 So. 2d 1023, 1025-26 (Fla. 4th DCA 2002). But this is not some special requirement of charging liens. Rather, the issue is one of jurisdiction. "[I]f notice is not given before entry of the final judgment or an order dismissing the case, the trial court loses jurisdiction to enforce a charging lien in the original action." *Naftzger v. Elam*, 41 So.3d 944 (Fla. 2nd DCA 2010). *See also Baker & Hostetler, LLP v. Swearingen*, 998 So. 2d 1158 (Fla. 5th DCA 2008) (stating that "*unless jurisdiction is properly reserved by the trial court*, a notice of an attorney's charging lien must generally be filed before

the lawsuit has been reduced to judgment or dismissed pursuant to a settlement in order to be timely" (emphasis added) and citing cases).

Here, the second final judgment was entered on September 18, 2009, more than two months before the charging liens were filed. However, even after the entry of that judgment, the case was vigorously litigated (See Doc. 306-313) during the period before the second appeal was filed. Most important, this Court specifically reserved jurisdiction over the issue of fees and sanctions pending resolution of the second appeal. (Doc. 310). *See Baker & Hostetler, LLP*, 998 So. 2d at 1163 (in marriage dissolution, where trial court had retained jurisdiction to determine whether wife could recover attorneys' fees from husband, and amount thereof, trial court implicitly retained jurisdiction over charging lien filed against wife by her own attorney).

The charging lien is an equitable remedy. *Nichols v. Kroelinger*, 46 So. 2d 722, 724 (Fla. 1950). There are no equitable principles here that would warrant a finding of untimeliness. Hill and Allen promptly filed their lien after Minks discharged them and Minks suffered no prejudice under these circumstances. Accordingly, the liens were timely filed.

The understanding. This litigation was difficult and protracted. Minks faced a formidable opponent with good lawyers. Consequently, the litigation also became expensive. In 2007, Mr. Minks was no longer able to keep up with his legal bills. He became delinquent as early as February 2007. (Doc. 342-12 at 2). Although Minks made several subsequent payments, his delinquency continued to grow. He never complained about the amounts of the bills, nor did he

contest his obligation to pay them. Rather, he sought forbearance from Hill and Allen with the mutual expectation that payment would be made from any future recovery.[3]

The mounting debt issue came to a head on March 10, 2009 when Hill wrote Minks a letter[4] regarding the cost of the second trial and his need for assurance that he would get paid. Minks responded in a letter dated March 16, 2009 (Exhibit 11) in which he said simply, "I will not get in a mudslinging contest with you over fees." Subsequently, in a letter dated April 10, 2009 (Exhibit 15), which addressed many other topics, Hill concluded by informing Minks that "I have also not received the payment of $25,000 that you promised and we still need to address the outstanding fees."

The correspondence between Minks and his attorneys picked up again after the second trial, mostly concerning Minks' dissatisfaction with the result and his lawyers' performance. Notwithstanding Minks' complaints and failure to pay, his attorneys dutifully filed his post-trial

---

[3] Minks maintains that those involved understood that fees were to be paid only from whatever attorneys' fees might be awarded by the Court. Minks' testimony in this regard is not credible, especially in light of the fact that the Court had cut Minks' requested fees in half after the first trial, due to Minks' pursuit of an incomprehensible damages theory. During the second trial, Hill and Allen experienced similar issues with their client trying to advance untenable positions. Under these circumstances, it defies common sense to conclude that Hill and Allen would have agreed to finance a second trial and get paid only if and to the extent the Court awarded them a fee afterwards. Hill's February 16, 2009 letter to Minks (Doc. 342-24) confirms this. In that letter, he repeatedly requests immediate payment and security for future payment while noting there is no guarantee this Court would award a significant amount of fees after a second trial.

[4] The letter was introduced into evidence at the hearing. The parties' Joint Exhibit List (Doc. 345) states that all of the exhibits were filed as attachments to the parties' Stipulation and Notice of Filing Back-Up Materials For Attorneys' Fees Application (Doc. 342). However, this letter appears to have been omitted. Accordingly, the Court will cite to it by its exhibit number – Exhibit 9 – rather than its docket citation. Any other citations in this opinion to exhibit numbers are done for the same reason.

motions (Doc. 267, 268, 270) and responded to the post-trial motions filed by Polaris (Doc. 296-298). In a letter dated September 11, 2009, one week before entry of the second final judgment, Hill told Minks, "I agreed to continue representing you on that case [Polaris] through trial and post trial motions only given the assurance of being paid from our ultimate recovery." (Exhibit 19).

During the fall of 2009, Hill discussed with Minks the possibility of a settlement with Polaris, but Minks would have none of it. Expressing his frustration in a letter dated October 9, 2009, Hill told Minks, "I simply see no end game or logical strategy to your litigation. . . . You are waging a war of attrition against an opponent that has vastly superior resources." (Exhibit 23). He concluded by advising Minks that he would not undertake any further representation after the post-trial motions had been resolved.

Minks hired new counsel, who filed the second appeal on October 19, 2009.[5] In a letter dated December 1, 2009, Minks told Hill that he should not expect additional payment "until fees are collected from Polaris." (Exhibit 24). Shortly thereafter, Hill and Allen filed their charging liens.

After resolution of the second appeal, Minks' new counsel engaged Polaris in settlement negotiations, which were ultimately successful (*See* generally Exhibit 25, Exhibit 26 and Exhibit 27). Interestingly, Minks' final counteroffer included a demand that Polaris pay "50% of the fees that Mr. Minks incurred in the second trial." (Exhibit 28). That number was compromised to a $50,000 "sweetener" that can be attributed to Minks' debt to Hill and Allen.

---

[5] Minks ended up paying his new lawyers more than $200,000 to pursue a fruitless appeal. Of course, that money could have been used to satisfy the debt to Hill and Allen

The evidence summarized above leads to the inescapable conclusion that there was at least an implied understanding and agreement that his attorneys' willingness to continue to finance Minks' litigation was based on Minks' promise to pay them from the proceeds of any payment by Polaris. Indeed, Minks used this obligation as a bargaining chip in his settlement negotiations with Polaris. For Minks to now claim that he should keep the fruits of their work without a corresponding obligation to pay is simply disingenuous. The Court thus finds that the charging liens are valid and enforceable.

### B.     The Reasonableness of the Fees

As noted above, there is no dispute as to the amount of time billed or the hourly rates charged. Rather, Minks maintains that the fees are unreasonable when viewed in light of the results obtained. Specifically, Minks contends that the appeals and second trial would have been unnecessary had Hill and Allen properly represented him at trial. The Court categorically rejects this contention.

Minks is a stubborn and litigious person who had a valid claim but was deluded as to its value. During the first trial, he ignored his attorneys' advice to assert a more reasonable damages theory. This stubborn refusal led to an unsustainable judgment which the Court had to remit, resulting in the first appeal. In the second trial, his attorneys again struggled to contain Minks' unrealistic damages expectations. They were successful in obtaining a verdict at the high end of any reasonable damages computation. In sum, Hill and Allen were successful in obtaining a good result (and settlement) <u>despite</u> their client's recalcitrance. As stated by Hill in his April 27, 2009 letter to Minks, "Almost any objective observer would consider this an extremely good result." (Exhibit 16). The Court agrees.

Minks argues that he should have been advised to hire a damages expert for the first trial. But even if his attorneys had pursued that course, it is speculative at best to assume that Minks would have agreed with them that such an expert was needed, that he could have afforded to pay the expert, that he could have found an expert willing to advocate his damages theory, or that the use of such an expert would have resulted in a sustainable verdict.

Minks contends that Hill and Allen agreed to handle the first appeal for a fixed fee of $50,000, and the documents (Exhibit 4, Exhibit 9) support this position (Doc. 342-19, Doc. 342-20, Exhibit 9). A review of Hill's invoices from July 17, 2007, when the appeal was filed, to November 2008, when the appeal was concluded, reflects total fee billing of $120,861.00. This represents an overage of $70,861.00, which will be deducted from Hill's lien amount.

Finally, Hill and Allen request pre-judgment interest on the amounts due them from the date of billing. However, the charging lien theory rests on the proposition that fees will be paid when the recovery is had. Thus, the Court will not include pre-judgment interest.

**IV. Conclusion**

The Court finds that the charging liens are valid and enforceable as follows:

| | |
|---|---|
| Hill, Rugh, Keller & Main, P.L. | $240,977.77 |
| - | 70,861.00   (Appeal overcharge) |
| | $170,116.77 |
| | |
| Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. | 25,398.86 |
| | |
| Total | $195,515.63 |

V.  **Order**

In consideration of the above, the motions to determine and enforce charging liens (Doc. 332, Doc. 334) are **GRANTED** as set forth above.  Absent a subsequent order of this Court, the Clerk shall disburse the above amounts to the above-referenced firms with accrued interest on August 15, 2011, and remit the balance to the plaintiff, Floyd Minks.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 2, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party